UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WAYNE WITHROW, | Case No. 1:18-cv-199 |
| Plaintiff, | Dlott, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Wayne Withrow filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In May 2013, Plaintiff applied for Disability Insurance Benefits (DIB) alleging disability beginning on February 9, 2013. (Tr. 288-290). His application was denied initially in July 2013 and upon reconsideration in September 2013. (Tr. 116-139). With a representative present, Plaintiff appeared and testified at an administrative hearing before Administrative Law Judge Steven Collins. (Tr. 12, 31-84). ALJ Collins issued an unfavorable decision on September 25, 2015 denying benefits entirely. (Tr. 12, 140-160). With his request for review, Plaintiff submitted new evidence to the Appeals Council, including a November 2015 medical source statement completed by treating physician, Alfred Kahn III, M.D. (Tr. 12, 167, 1123-1125). On October 25, 2016, the Appeals Council found that the previous ALJ's decision should be vacated to consider this new evidence

1

and also because the previous decision did not provide a clear basis for finding that Plaintiff could not do his past relevant work as a commercial photographer. (Tr. 12, 166-168). A new hearing was held in front of ALJ Thuy-Anh Nguyen on March 14, 2017. (Tr. 85- 115). On April 28, 2017, the ALJ issued a partially favorable decision concluding that Plaintiff was not disabled and not entitled to benefits from the date of his alleged onset until January 27, 2015.

From the alleged onset date of disability of February 9, 2013, the ALJ concluded that Plaintiff had the following severe impairments: degenerative changes in the cervical and lumbar spines, status post discectomy and fusion of C5-C7 in 2013; cervical radiculopathy in the right upper extremity; neuropathy in the bilateral upper extremities; a history of myocardial infarction with bridging; abdominal wall hernia; and obesity. Beginning on the onset date of disability of January 28, 2015, the ALJ found Plaintiff to have the same severe impairments with the addition of deterioration of the cervical spine leading to further cervical fusion. (Tr. 15).

From the date of his alleged onset until January 27, 2015, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with a significant number of postural and environmental limitations. (Tr. 34-54). During this time, the ALJ further determined that Plaintiff was unable to perform his past relevant work, but based on his age, education, work experience, and RFC, a hypothetical individual would be able to perform the requirements of a substantial number of jobs in the national economy (Tr. 20-23). The ALJ also concluded that starting on January 28, 2015, Plaintiff would require additional restrictions, specifically limitations to only occasionally handling and feeling bilaterally, which the Vocational Expert testified would preclude all competitive

2

employment. (Tr. 20-22). Accordingly, the ALJ determined that Plaintiff was disabled beginning on January 28, 2015, and would be granted benefits beginning that date. (Tr. 22). The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

Plaintiff now seeks judicial review of the ALJ's decision finding that he was not disabled from February 9, 2013 through January 27, 2015 asserting that is not supported by substantial evidence. In this regard, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC assessment because he failed to afford controlling weight to the opinions of Plaintiff's treating physician.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or a combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is substantially supported**

Plaintiff argues that his disability started on his alleged onset date, of February 9, 2013, rather than the ALJ's determination that his disability began on January 28, 2015. In support of his argument, Plaintiff argues that the ALJ should have afforded significant weight to the opinions provided by his treating physician, Alfred Kahn III, M.D., who opined that he was disabled in 2013.

Here the record contains the following medical and opinion evidence:

On February 20, 2013, Plaintiff had an initial consultation with Alfred Kahn, III, M.D. regarding his cervical spine. (Tr. 642-643). He reported that his pickup truck was hit from the rear in June 2012 and was totaled which resulted in back, arm, and wrist pain. (Tr. 642-643). He also reported weakness in both hands. (Tr. 642-643). He reported to Dr. Kahn that he had had seven months of chiropractic care but did not experience sufficient improvement. (Tr. 642-643).

On March 28, 2013, Dr. Kahn preformed neck surgery, which involved fusion of two cervical spine vertebrate using bone graft and plating (i.e. metal hardware). (Tr. 638-640). Plaintiff spent one night in the hospital. (Tr. 646-647). Plaintiff returned to Dr. Kahn on April 29, 2013 for an evaluation one month after surgery. (Tr. 637). Dr. Kahn wrote

5

that "he really looks super" and that he was "letting him out of his [neck] brace during waking hours at the house" but he advised Plaintiff to "wear it if he is outside fiddling around." (Tr. 637). Dr. Kahn noted that "X-rays show excellent position of bone and metal with good early healing." (Tr. 637). On May 29, 2013, Dr. Kahn wrote that Plaintiff's neck x-rays "look absolutely super" and he did not need to wear his brace all day. (Tr. 634). Dr. Kahn wrote that Plaintiff should wear the neck brace "if he is doing anything such as going to a grocery store or doing anything besides just being quite sedentary." (Tr. 635). Still, he ended the progress note by stating "temporary total disability two months." (Tr. 635).

Plaintiff returned on July 10, 2013, and Dr. Kahn noted that his neck has "healed beautifully." (Tr. 634). Dr. Kahn recommended anti-inflammatory medication and physical therapy because Plaintiff was still a little stiff. (Tr. 634).

An MRI was taken on July 28, 2013 and it showed "mild bony spurring of vertebral body end plates throughout lower thoracic and lumbar spine." (Tr. 620). There was also mild narrowing and facet arthropathy in the lumbar spine but no malalignment with flexion or extension. (Tr. 620)

On August 14, 2013, Dr. Kahn wrote that Plaintiff had some "degenerative disc disease" primarily at L4-L5 and L5-S1. (Tr. 633). He wrote "[t]his is not the worst thing I have ever seen but it does cause pain, particularly when somebody is doing heavy work." (Tr. 633). Dr. Kahn prescribed medication and a back brace, and said to come back in one month to "see if he is ready to go back to work at that time." (Tr. 633).

Plaintiff did not return to Dr. Kahn until one year later for an annual physical in August 2014. (Tr. 871). At that time, Dr. Kahn noted that Plaintiff reported having "increasing discomfort in his neck and back but his insurance is a bit out of whack right

6

now." (Tr. 871). Dr. Kahn did not note any clinical abnormalities such as muscle spasm, atrophy, tenderness, or diminished range of motion. (Tr. 871). He told Plaintiff to return in a year or whenever he got his insurance straightened out. (Tr. 871). Dr. Kahn noted that Plaintiff "will remain on disability at this point." (Tr. 871).

Plaintiff visited Robert Caldemeyer, M.D. on January 28, 2015, and requested that disability forms be filled out. (Tr. 993, 995). Plaintiff reported pain with swallowing, bending, and twisting, as well as "periodic upper and lower extremity numbness and tingling." (Tr. 997). On exam, Plaintiff had reduced range of motion in the neck and lower back, left trapezius muscle spasm, and some unspecified tenderness, but no edema. (Tr. 998). Plaintiff stated that he was unable to work when using his neck brace and that he was seeing his chiropractor 1-2 times per week. (Tr. 998). Dr. Caldemeyer referred Plaintiff back to Dr. Kahn. (Tr. 993).

Plaintiff had a cervical spine MRI in February 2015 which MRI showed "[s]tatus post anterior short discectomy and fusion at C5-C6 and C6-C7.

Plaintiff returned to Dr. Kahn in March 2015 who stated that the MRI findings were "[b]asically . . . the same as they have been." (Tr. 1058). Dr. Kahn wrote "[w]e are going to try epidural steroids and physical therapy. If that does not work, he knows we can extend the fusion. I will see him, depending on how he is doing." (Tr. 1058).

In November 2015, Dr. Kahn completed a checkbox Physical Capabilities Questionnaire for an insurance company. (Tr. 1124-1125). He checked boxes indicating that Plaintiff could never bend, squat, climb ladders, kneel or crawl, but he could occasionally sit, stand, walk, climb stairs, and drive. (Tr. 1124). He opined that Plaintiff could work a "sedentary lift" job. (Tr. 1124). Dr. Kahn opined Plaintiff could occasionally

7

do simple grasping with the right hand but never left, and never, reach, push, pull, perform fine manipulation or feeling/tactile sensation. (Tr. 1125). Dr. Kahn wrote that his last examination was March 2, 2015, and he had numbness, tingling, sharp pain in both hands, and lower back spasm and degenerative disc disease. (Tr. 112)

Additionally, the record contains medical opinions from state agency reviewing physicians. Notably, in July 2013, Robert Klinger, M.D., reviewed the evidence on behalf of the Ohio disability determination service. (Tr. 121-124). Dr. Klinger opined that Plaintiff could perform light work, with standing/walking only 4 hours per workday, and sitting up to 6 hours in a work day. (Tr. 19, 121-122). He further determined that Plaintiff could never climb ladders, ropes or scaffolds but could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. (Tr. 19, 121-122). He also found that he could only reach overhead on an occasional basis, and was to avoid concentrated exposure to extreme cold and heat, and avoid all exposure to hazards such as machinery and heights. (Tr. 19, 123). Steve McKee, M.D. also reviewed the evidence on behalf of the state agency in September 2013, and affirmed Dr. Klinger's assessment in full. (Tr. 50, 134-136).

In formulating Plaintiff's RFC, the ALJ gave "little weight" to Dr. Kahn's disability statements from May 2013, August 2013, and August 2014. (Tr. 19-20). The ALJ gave "some weight" to Dr. Kahn's disability statement from November 2015. (Tr. 20). The ALJ also gave "partial weight" to the opinions of the state agency reviewing physicians, Dr. Klinger and Dr. McKee. (Tr. 19). Plaintiff argues that the ALJ erred in failing to give controlling weight to Dr. Kahn's disability statements beginning in 2013.

In evaluating the opinion evidence, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment

relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)). Upon careful review and as explained below, the undersigned finds, that the ALJ's evaluation of the opinion evidence comports with Agency regulations and controlling law.

A treating medical source's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(c)(2). If the ALJ declines to give controlling weight to a treating source's opinion, the ALJ will determine the weight to attribute to the opinion based on a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). These factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The regulations "expressly require only that the ALJ's decision include 'good reasons'" for the weight given to the treating source's opinion, "not an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).

Here, Plaintiff argues that Dr. Kahn's findings were entitled to deference because they were supported by objective findings on exam, MRIs and x-rays dating back to at least June of 2012, when Plaintiff was involved in a motor vehicle accident. (Tr. 419-420, 519, 520, 523, 620, 629, 643). On exam, Dr. Khan observed muscle weakness and decreased reflexes in the arms and hands (*Id.*). Plaintiff's symptoms ultimately required two fusion surgeries and decompression, and even after his first surgery, Plaintiff continued to endorse the same complaints. (Tr. 1061, for example, when Plaintiff endorsed trouble for over a year with things like driving and turning his neck). Plaintiff further contends that Dr. Kahn's findings are supported by and consistent with Plaintiff's complaints of continued numbness and tingling in both his upper and lower extremities and Plaintiff's testimony that his neck and back pain were aggravated by swallowing, bending, and twisting and his symptoms have not been relieved by any attempted treatment including rest, chiropractic care, heat, exercises, muscle relaxants, and the use of a neck brace. (Tr. 508, 510).

Plaintiff further argues that the ALJ did not give good reasons for failing to give deference to Dr. Kahn's findings. According to Plaintiff, the ALJ noted gaps in Dr. Kahn's treatment notes rendering his opinion less persuasive (Tr. 19); however, treatment notes from both Drs. Calmeyer and Kahn indicate that Plaintiff was having difficulty with insurance approval for further treatment of his neck and back issues. (Tr.871, 993). Nevertheless, when Plaintiff returned to Dr. Kahn in February of 2015, he reported "trouble for over a year with things such as driving and turning his neck." (Tr. 1061, emphasis added). While Dr. Kahn noted solid fusion by x-ray, he also noted degenerative changes above his fusion, which ultimately required another fusion surgery. (Tr. 1061,

10

1211, 1212). Plaintiff claims that the ALJ's decision to arbitrarily assign one office visit from Plaintiff's family doctor as the date that Plaintiff became disabled despite a long treatment history with supporting objective and clinical findings is simply without merit. As such, Plaintiff claims that the ALJ's RFC prior to January 28, 2015 is largely based on a selective review of the record. There is substantial evidence that the additional limitations of "only occasional handling and feeling with the bilateral extremities" included in the ALJ's ultimate RFC finding should extend back to at least the original onset date of February 09, 2013. Plaintiff's contentions are unavailing.

The ALJ properly gave only "little weight" to Dr. Kahn's disability statements from May 2013, August 2013, and August 2014 (Tr. 19-20). With respect to Dr. Kahn's May 2013 opinion that Plaintiff "was subject to '[t]emporary disability' for 'two months'" the ALJ explained that Dr. Kahn's "opinion was rendered just after the claimant's first surgical fusion of the cervical spine, and therefore was not intended as a statement of the claimant's work capability on a long-term basis." (Tr. 19, 635). This finding clearly comports with Agency regulations. See 20 C.F.R. § 404.1509 (in order to be found disabled "[an] impairment . . . must have lasted or must be expected to last for a continuous period of at least 12 months."). Here, Dr. Kahn thought Plaintiff's neck surgery would require only two months off of work, and that this period would be "temporary." (Tr. 19, 635). Also, the ALJ recognized that this notation was "conclusory regarding the issue of potential disability" and therefore was properly discounted (Tr. 19, 635). *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) ("Conclusory statements from physicians are properly discounted by ALJs.").

11

Moreover, as noted by the Commissioner, the ALJ properly determined that Dr. Kahn's August 2013 statement that Plaintiff was to return for follow up in one month to see if he was "ready to go back to work," was not a medical opinion, since it provided no description of functional restrictions nor any citation to findings to support any limitations (Tr. 19, 633). *See Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 651 n.3 (6th Cir. 2009) ("Dr. McCord's responses . . . address the general relationship between Allen's spinal condition and the symptoms/limitations it may cause, rather than addressing the specific extent of Allen's limitations. . . . [These] responses appear to be outside the scope of 'medical opinions' as defined in 20 C.F.R. § 404.1527(a)(2).").

The ALJ further explained that he assigned little weight to Dr. Kahn's August 2014 opinion that Plaintiff was to "remain in disability at this point" because Dr. Kahn "had not examined the claimant in the year leading up to this statement, and his use of the term "disability" was not within a specific definitional context." The ALJ further noted that Dr. Kahn "did not set forth any function by function analysis, and even if he had done so his findings were without citation to supportive objective observations." (Tr. 20). *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.")

Additionally, as noted by the Commissioner, the vast majority of Dr. Kahn's treatment notes consist mostly of his reports of Plaintiff's subjective complaints rather than objective documentation of abnormalities. *See Payne v. Comm'r of Soc. Sec.*, 402 Fed. Appx. 109, 112–13 (6th Cir. 2010) (ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own

treatment notes). For example, at his initial February 2013 exam, Plaintiff had normal gait and normal sensory exam. (Tr. 642). While X-rays showed severe cervical spine issues, and his exam revealed diminished reflexes and strength in the right arm, these were addressed with surgery. (Tr. 642). After his March 2013 neck surgery, Dr. Kahn wrote that Plaintiff "really looks super" and that he was "letting him out of his [neck] brace during waking hours at the house." (Tr. 637). Dr. Kahn noted that "X-rays show excellent position of bone and metal with good early healing." (Tr. 637). In May 2013, Dr. Kahn wrote that Plaintiff's neck xrays "look absolutely super" and he did not need to wear his brace all day. (Tr. 634). In July 2013, Dr. Kahn noted that Plaintiff's neck has "healed beautifully." (Tr. 634). An MRI showed only mild spinal abnormalities (Tr. 620). *See Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 553 (6th Cir. 2016) (ALJ appropriately relied on mild to moderate diagnostic findings to support RFC assessment of light work).

Furthermore, the ALJ properly afforded partial weight to the limitations provided by Drs. Klinger and McKee. As noted by the ALJ, "they did not have the opportunity to examine the claimant directly, and new evidence has been submitted into the record since the time of those reviews" (Tr. 19). *See Kepke v. Comm'r of Soc. Sec.,* 636 F. App'x 625, 632 (6th Cir. 2016) (finding that the ALJ subjected a non-examining opinion "to at least some scrutiny" where, inter alia "the ALJ … applied even greater restrictions in this area than [the non-examining doctor] opined were appropriate."). The ALJ found that the new evidence showed that Plaintiff required further limitations, and thus, the ALJ restricted Plaintiff "to performing work within the sedentary exertional range and further determining that that he could stand or walk for a total of four hours in an eight-hour work day and sit

13

for about six hours in an eight-hour work day." (Tr. 19). As the ALJ explained, this RFC accommodated the opinions provided by Dr. Klinger and Dr. McKee.

As such, the ALJ also properly determined that beginning January 28, 2015, Plaintiff required even greater restrictions. The ALJ determined that the turning point was an "examination on January 28, 2015, [which] documented a progression of the claimant's orthopedic difficulties as of that date following a long period of time during which" Plaintiff had not had regular examinations for his impairments. (Tr. 20). As detailed above, "in August 2013, [Dr. Kahn] recommended that [Plaintiff] wear a back brace, but the claimant did not return for examination until an annual check-up a year later that involved only medication management.[1] The record does not document significant additional back problems until the examination by Dr. Caldmeyer in January 2015. The increased spinal difficulties noted at that time eventually led to the additional corrective surgery performed in June 2016." (Tr. 19).

It is well established that it is within the ALJ's right, in the absence of a credible medical opinion, to make a determination on the need for additional limitations based on the medical evidence in front of him. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ - not a physician - ultimately determines a claimant's RFC."). As explained above, the ALJ properly

---

[1] Plaintiff also testified that he continues to use a neck brace after his first surgery in March 2013. Plaintiff argues that at the hearing, the VE testified that the jobs listed in response to the ALJ's RFC were essentially clerical and would require moving his head up and down on a frequent basis. (Tr. 112-113). As such, Plaintiff argues that his need to use a neck brace would erode his ability to perform even sedentary jobs. Plaintiff's contention lacks merit. In support of this argument, Plaintiff cites only to medical records from 2013 which indicate that Plaintiff was still wearing his neck brace for periods of time after his March 2013 surgery. Notably, in April 2013, Dr. Kahn states: "I am letting him out of his brace during waking hours at the house." (Tr. 637)., Plaintiff fails to cite to any additional record evidence that establishes he required the use of a neck brace that would prevent him from performing sedentary work.

14

explained that "[t]he record does not document significant additional back problems until the examination by Dr. Caldmeyer in January 2015." (Tr. 19).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton,* 246 F.3d at 772. As such, the Sixth Circuit as stated that, "substantial evidence is a fairly low bar." *Hickey Haynes v. Barnhart*, 116 F. App'x 718, 726 (6th Cir. 2004). Accordingly, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's impairments were not disabling prior to January 28, 2015. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                          *s/Stephanie K. Bowman*
                          Stephanie K. Bowman
                          United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

WAYNE WITHROW,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:18-cv-199

Dlott, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).